```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

UNITED STATES OF AMERICA

VS.                         CRIMINAL ACTION NO. 3:05CR156TSL-JCS

ROBERT E. MAPP

MEMORANDUM OPINION AND ORDER

This cause is before the court on the appeal of Robert E. Mapp of his August 17, 2005 conviction pursuant to 36 C.F.R. § 4.23 (driving under the influence).  The government opposes the appeal, and the court, having considered the parties' memoranda and the record in this case, concludes that the appeal is not well taken and thus, that defendant's conviction is due to be affirmed.

On April 17, 2005, Mapp, who had admittedly just left a bar after consuming, at least, two beers, was stopped at a "driver's license checkpoint" on a portion of Mississippi Highway 43, located directly underneath a bridge along which the Natchez Trace Parkway runs.  The checkpoint was established by  Mississippi Highway Patrol Officer Tom Collins, who enlisted Natchez Trace Parkway Park Ranger Rachel Strain to assist him.

At trial, Ranger Strain testified that as she approached Mapp's vehicle, she smelled alcohol and observed that Mapp had

glassy eyes and slowed, slurred speech.  After Mapp failed the two portable breathing tests, which were administered on the roadside, he was transported to the Madison County Sheriff's Department.  Once at the Madison County Sheriff's Department and after the prescribed waiting period, Strain administered a third test on the Intoxilyzer 8000 machine.  The reading on this machine registered .09%.  Following this result, Strain issued a citation to Mapp for violation of 36 C.F.R. § 4.23.[1]

---

[1]
   Part 4 of Title 36 of the Code of Federal Regulations deals with traffic and vehicle safety within the National Park System. Section 4.1 states:

>   The applicability of the regulations in this part is described in § 1.2 of this chapter.  The regulations in this part also apply, regardless of land ownership, on all roadways and parking areas within a park area that are open to public traffic and that are under the legislative jurisdiction of the United States.

   Section 1.2(a) of Title 36 of the Code of Federal Regulations provides, in part:

>   (a) The regulations contained in this chapter apply to all persons entering, using, visiting, or otherwise within:
>
>   (1) The boundaries of federally owned lands and waters administered by the National Park Service; [and]
>
>   (2) The boundaries of lands and waters administered by the National Park Service for public-use purposes pursuant to the terms of a written instrument.

   Section 4.23 provides, in part:

>>   (a) Operating or being in actual physical control of a motor vehicle is prohibited while:
>>
>>   (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of

Mapp was tried on August 17, 2005.  After receiving testimony from the arresting officer and the defendant and a proffer of the testimony of an expert witness desired by the defense, the magistrate judge found Mapp guilty and sentenced him to one year's probation and a $2300 fine.  On October 14, 2005, defendant filed his notice of appeal.

By his appeal, Mapp argues that the government failed to prove at trial that the National Park System had concurrent jurisdiction over Mississippi Highway 43, so as to have jurisdiction to prosecute him criminally.  In support of his contention, Mapp cites 18 U.S.C. § 7(3), which provides, in pertinent part, that the United States has federal criminal jurisdiction over "any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof."  He further reasons that dismissal is required because the record fails to demonstrate that the government complied with the requirements of 40 U.S.C.

---

safe operation; or

(2) The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

§ 3112,[2] the mechanism by which, he contends, the government acquires concurrent or exclusive jurisdiction over any property it has acquired.  Alternatively, he argues that the roadblock employed by the highway patrol officer and park ranger was unconstitutional and that, in any event, the evidence does not support his conviction.

The court first addresses the jurisdictional issue.  In its opposition to the appeal, and without addressing Mapp's

---

[2]  Subsection (b) of § 3112, provides as follows:

When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained.  The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.

Subsection (c) provides that "[i]t is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section."

Similarly, the Mississippi Code provides that the United States may acquire land for public roadways but retains concurrent jurisdiction with Mississippi with respect to civil and criminal process.  See Miss. Code Ann. 55-5-17.  The statute further specifically provides that the United States is not vested with jurisdiction "unless and until it, through the proper officer or officers, notifies the governor, through him, the State of Mississippi that the United States of America assumes concurrent police jurisdiction over the land or lands thus deeded and conveyed."

argument that the government failed to prove its compliance with § 3112, the government points out that the Natchez Trace Parkway is part of the National Park System, 16 U.S.C. §§ 1, 1a-1, and that the United States park rangers have been designated to "maintain law and order and protect persons and property" within the park system, 16 U.S.C. §§ 1a-6, 460. Although the government does not explicitly state as much, the court gathers that the government's position is that because Strain's testimony shows that the United States owns the Natchez Trace Parkway, including the land underneath the bridge which crosses over Highway 43, its status as a property owner entitles it to enact regulations for and to apply its regulations to conduct which, admittedly, occurred on a state road. That is, as best the court can discern, the government relies on the Property Clause, Article IV, § 3, cl. 2 of the Constitution, as its source of jurisdiction in this case.

Article IV, section 3, cl. 2 of the Constitution provides: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." As is pertinent here, the Supreme Court, while recognizing that a State would "undoubtedly retain[] jurisdiction over federal lands within its territory," has determined that even in the absence of "consent or cession" of jurisdiction by a State, Congress "retains the power to enact regulations respecting those lands." Kleppe v. New Mexico, 426 U.S. 529,

542-43, 96 S. Ct. 2285, 2293, 49 L. Ed. 2d 34 (1976).  This power over its property within a state "is analogous to the police power of the several states, and the extent to which it may go in the exercise of such power is measured by the exigencies of the particular case."  Id. at 540, 96 S. Ct. at 2292.

Two years after Kleppe, the Fifth Circuit, citing Kleppe, concluded that, despite the fact that the State of Florida had not granted to the federal government either exclusive or concurrent jurisdiction over land on which a post office was located (via the "byzantine process of securing exclusive or concurrent jurisdiction"), the federal government, nonetheless, had jurisdiction to prosecute a postal employee for traffic infractions occurring on the property.  United States v. Gliatta, 580 F.2d 156, 158-59 (5th Cir. 1978).  In reaching this conclusion, the Fifth Circuit found that the federal government had the power to "enact and enforce regulations pertaining to postal service and government property," pursuant to both the Post Office Clause, Article I, § 8, cl. 7 and, and as is pertinent here, the Property Clause.  The court stated:

> Beyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which, like those at issue in this case, are designed to maintain safety and order on government property.

Id. at 160.

Regarding the jurisdictional issue, at trial, the

government called Strain as its first witness and in its attempt to establish the element of jurisdiction, the Assistant United States Attorney (AUSA) elicited, without objection, the following testimony from Strain:

> Q.  You said that you were operating a checkpoint. Were you within the confines and was that checkpoint within the jurisdiction of the Natchez Trace Parkway?
>
> A.  That is correct.  It was on the property of the Natchez Trace Parkway.

On cross-examination, the following exchange occurred between Strain and defense counsel:

> Q.  You were on 43 at this checkpoint or were you on the Trace?
>
> A.  It's actually on 43 underneath the Trace, but still on Natchez Trace Parkway property.
>
> Q. And so it's your position that the Ranger Service has jurisdiction over Highway 43, a county road?
>
> A.  We own approximately 100 yards on either side of the Parkway, and it just happens that Highway 43 runs underneath it.  So yes, it's ours.
>
> Q.  Underneath the Parkway?
>
> A.  We own the property, so we have concurrent jurisdiction, which allows us to work with the County and State on our property.
>
> Q. You own that part of the road?
>
> A. We own the land underneath the Parkway.

On redirect examination, the AUSA inquired as to Strain's familiarity with the geographic confines of the Natchez Trace Parkway.  After Strain affirmed her familiarity, the AUSA asked: "And just so the record is clear, based upon your

7

familiarity with the confines of the Natchez Trace Parkway, was this checkpoint within the confines of the Natchez Trace Parkway?"  Strain answered, "Yes, it was."

Here, the uncontested proof at trial shows that at the time of the offense, although Mapp was traveling on a state highway, Mapp was on Natchez Trace Parkway property.  Further, despite Mapp's contention that because "how people drive on a state highway that runs underneath the parkway does not threaten the designated purpose of the Natchez Trace," the government may not purport to regulate this activity, it is clear that the federal government does have the authority to promulgate and enforce regulations governing traffic safety on its property.  Gliatta, 580 F.2d at 160; see also United States v. Dreos, 156 F. Supp 200, 207 (D. Md. 1957) (concluding that Congress had authority under the Property Clause to regulate use of Baltimore-Washington Parkway, a part of the National Park System).  Based on this, the court is satisfied that at trial, the government established territorial jurisdiction, and the court next turns to Mapp's argument that the checkpoint/roadblock was unconstitutional.

At the close of the evidence and prior to the magistrate judge's pronouncement of the verdict, defendant moved to dismiss the case on the ground that the roadblock employed by Strain and the highway patrol officer violated the principles set forth in City of Indianapolis v. Edmond, 531 U.S. 32, 121

S. Ct. 447, 148 L. Ed. 2d 333 (2000).  In reviewing the denial of a motion to suppress (which, in essence, is the relief Mapp sought by his motion to dismiss), this court employs a two-tiered standard, examining the factual findings of the trial court for clear error, and its ultimate conclusion as to the constitutionality of the law enforcement actions de novo. United States v. Washington, 340 F.3d 222, 226 (5th Cir. 2003)  Having reviewed the record in this case, the court concludes that there is no error.

As set forth above, on direct examination, Officer Strain testified that she had been asked to participate at the checkpoint by Mississippi Highway Patrol Officer Tom Collins.  On cross-examination, Strain stated that Collins had apprised her that "it was a driver's license checkpoint," the purpose of which was to check "the status of the driver's license to see if it was valid."  Strain further testified regarding the setup of the roadblock:  "In the roadblock itself, we had both of our vehicles with our lights on to kind of tell people that we were in the area.  Officer Collins' vehicle was directly on the road and mine was adjacent to the Trace looking down."  Strain also stated that the following procedures were employed at the roadblock:

> What we do is the cars come up to us, and we ask the driver for his driver's license.  At that time they will hand over the driver's license, and we'll do a quick around on the car to see if there are any equipment problems so that we can inform the person, and if the driver's license is valid and everything

is okay with the vehicle, we send them on.

Additionally, Strain denied that the purpose of the checkpoint was to determine whether people leaving the bar located on Highway 43, approximately a mile from the checkpoint, were driving erratically or were intoxicated. On this point, Strain testified that "the bar itself is over a hill, and you have no way of knowing if they are coming from the bar or if they are coming from Madison."

Contrary to Mapp's contention at trial, Edmond, is not implicated in this case. In Edmond, the Supreme Court determined that "[t]he primary purpose of the Indianapolis narcotics checkpoints [was] in the end to advance 'the general interest in crime control,'" and, for that reason, concluded that individualized suspicion was required to search the vehicles proceeding through the checkpoint. Id. at 44, 121 S. Ct. at 455. In reaching this decision, the Court made clear:

> It goes without saying that our holding today does nothing to alter the constitutional status of the sobriety and border checkpoints that we approved in Sitz and Martinez-Fuerte, or of the type of traffic checkpoint that we suggested would be lawful in [Delaware v.] Prouse, [440 U.S. 648, 99 S. Ct. 1391. 59 L. Ed. 2d 650 (1979)].

Id. at 47, 121 S. Ct. at 457. Furthermore, given that Strain's testimony (which the magistrate judge implicitly credited) established that the roadblock at issue here was a driver's license checkpoint and not one to determine sobriety, it is clear that the holding in Michigan Department of State

10

Police v. Sitz, 496 U.S. 44, 110 S. Ct 2481, 110 L. Ed. 2d 412 (1990) (upholding state program creating "sobriety" checkpoints), despite defendant's contention to the contrary, is not implicated.

Finally, defendant asserts that the "roving checkpoint" established by Officer Collins and Ranger Strain, "smacks of the unconstrained exercise of discretion" prohibited by Delaware v. Prouse, 440 U.S. 648, 99 S. Ct. 1391. 59 L. Ed. 2d 650 (1979).  In Prouse, the Supreme Court disapproved of random stops of individual drivers as part of an effort to apprehend unlicensed drivers and detect unsafe vehicles.  In reaching its decision the Court observed that random stops of individual vehicles, achieved by an "unsettling show of authority," are more likely to engender fear and anxiety than are traffic checkpoints where "the motorist can see that other vehicles are being stopped, [] can see visible signs of the officers' authority, and [] is much less likely to be frightened or annoyed by the intrusion." Id. at 657, 99 S. Ct. at 1398.  The Court ultimately held that

> except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

Id. at 663, 99 S. Ct. at 1401.  The Court further stated:

> This holding does not preclude the State of Delaware

11

> or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. <u>Questioning of all oncoming traffic at roadblock-type stops is one possible alternative</u>.

<u>Id</u>. (emphasis added).  Here, the magistrate judge had before him testimony that: (1) the officers used the lights from their patrol cars to apprise motorists as to the existence of the checkpoint; (2) the officers could not determine whether the vehicles were coming from the bar or from the City of Madison; and (3) the officers stopped traffic in both directions.  On this factual basis, the court concludes that the magistrate judge did not err in his decision to deny defendant's motion to dismiss/suppress.

Lastly, the court turns to defendant's argument that there is not sufficient evidence to support his conviction. Because this was a non-jury trial, the standard of review is whether the verdict is supported by substantial evidence. <u>United States v. Lee</u>, 217 F.3d 284, 288 (5th 2000).  Thus, "[t]o reverse the defendant['s] conviction[], this Court must conclude that no rational trier of fact could find substantial evidence establishing the defendant['s] guilt beyond a reasonable doubt."  <u>Id.</u>  Under this standard, the court "considers the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the trial court."  <u>Id.</u>  Here, the testimony at trial showed that: (1) Ranger Strain detected a strong odor of alcohol when she approached the vehicle which defendant was driving; (2)

Ranger Strain observed that Mapp's eyes were glassy and that he had slowed, slurred speech; (3) defendant admitted to Ranger Strange that he had consumed at least two beers that evening, including one beer that he consumed immediately prior to leaving the bar; and (4) Mapp was given a Breathalyzer test which indicated that his blood alcohol content was 0.09. Clearly, in light of the foregoing, there was substantial evidence to support the magistrate judge's guilty verdict.

Based on the foregoing, it is ordered that the conviction of defendant Robert Mapp, Jr. is affirmed.

SO ORDERED, this the 7th of June, 2007.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE